UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HANDAL & MOROFSKY, LLC,

                      Plaintiff,

– against –

VIATEK CONSUMER PRODUCTS GROUP, INC.,
and LOUIS LENTINE,

                      Defendants.

**OPINION AND ORDER**

18 Civ. 1887 (ER)

Ramos, D.J.

The law firm, Handal & Morofsky, LLC ("H&M"), represented Viatek Consumer Products Group, Inc. ("Viatek") in four intellectual property cases. During the course of its representation, H&M sent Viatek multiple invoices that were allegedly not paid in full. H&M brings this suit alleging breach of contract, quantum meruit, account stated, and unjust enrichment. Plaintiff also asks that a constructive trust be established for the unjust enrichment claim.

Viatek, which is owned and run by Louis Lentine ("Lentine"), has filed two counterclaims asserting it received below-standard representation from H&M. Lentine now moves to dismiss the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons set forth below, Lentine's motion to dismiss is GRANTED.

---

[1] Viatek does not join in the motion to dismiss.

## I. Background[2]

Viatek sells a variety of consumer products. Amend. Compl. ¶ 20, Doc. 18. In June 2013, Radiancy, Inc. ("Radiancy") sued Viatek in the Southern District of New York for infringing on its patent in a hair removal product. *Id*. ¶ 21. Viatek retained H&M to represent it in that action.[3] *Id*. ¶ 22. Viatek and H&M came to an oral agreement on legal fees, including an advance fee that Viatek would pay to H&M. *Id*. ¶ 27. Subsequently on June 6, 2013, H&M sent a written retainer agreement to Viatek, but Viatek never returned the agreement and did not pay the advance fee it had orally agreed to pay. *Id*. ¶¶ 27-28.

Weeks into the representation, H&M received a call from counsel for Radiancy, Proskauer Rose LLP ("Proskauer"), inquiring as to who was representing Viatek, because Proskauer had received notice from another firm, Ryder, Lu, Mazzeo, and Monieczny, LLC (the "Ryder Firm"), advising that it had just been retained to represent Viatek in the infringement action.[4] *Id*. ¶¶ 29-30.

After the Ryder Firm entered its appearance in the Radiancy action, it filed a motion to change venue. *Id.* ¶¶ 36-38. Shortly after, Viatek asked Plaintiff to resume its representation. *Id*. Viatek & H&M again came to an agreement on the terms of the representation, including a smaller advance fee than the one previously agreed to. *Id*. ¶ 39. Viatek paid the advance fee and on August 30, 2013, H&M resumed its representation of Viatek, withdrawing the Ryder Firm's motion to change venue. *Id*. ¶¶ 40-41.

---

[2] The following facts are drawn from the allegations in the Amended Complaint, which the Court accepts as true for the purposes of the motion to dismiss. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[3] *See Radiancy, Inc. v. Viatek Consumer Products, Inc.,* No. 7:13 Civ. 3767-NSR (S.D.N.Y.).

[4] The Amended Complaint does not specify when the Ryder firm was retained.

Radiancy served discovery requests on Viatek and received initial responses from them. *Id*. ¶ 54. However, Lentine complained that the scope of the discovery was too broad. *Id.* Radiancy, in turn, alleged that Viatek's initial responses were inadequate and filed motions to compel production and for sanctions. *Id.* The court rejected the sanctions motion but ordered Viatek to produce additional documents. *Id.* Viatek produced some documents, but against the advice of H&M, refused to produce other responsive documents. *Id.* On April 1, 2014, Viatek was sanctioned for failure to comply. *Id*. H&M alleges Viatek intentionally ignored the court orders as part of a strategy to manufacture a dispute as an excuse to avoid paying its legal fees. *Id*. ¶ 55. In response to the imposition of sanctions against Viatek, H&M successfully applied for the appointment of a Special Master with experience in patent cases to oversee discovery. *Id*. ¶¶ 57-60. The Special Master ultimately found Viatek's production to be sufficient. *Id*.

During this process, Viatek continued to leave invoices unpaid, despite H&M's request for payment. *Id*. ¶ 67. In response, Viatek asked that H&M limit its fees to $20,000 per month. *Id.* ¶ 68. On April 8, 2014, H&M agreed to the monthly limitation. *Id.* ¶ 70. Viatek also instructed H&M to offset any outstanding legal bills in the Radiancy action using the settlement amount of a separate action in which H&M was representing Viatek, discussed below, as settlement in that action was imminent. *Id.* ¶ 70.

Eventually, Proskauer contacted H&M to discuss a settlement of the Radiancy action. Upon being informed, Viatek complimented H&M for its work, but subsequently retained Grant, Konvalinka & Harrison, P.C. (the "Grant Firm") to represent it in the Radiancy action. *Id*. ¶¶ 75-76. Viatek directed H&M not to perform any legal work except at the direction of the Grant Firm. *Id.* ¶ 76. The Grant Firm took over the representation from H&M and, as early as August 14, 2014, drafted documents for H&M to file. *Id*. The Amended Complaint does not specify

3

what documents were drafted for H&M to file. On August 29, 2014, weeks after retaining the Grant Firm, Viatek retained yet a fourth firm, Harness, Dickey & Pierce (the "Harness Firm") and the Harness Firm took over the Radiancy action from the Grant Firm. *Id*. ¶¶ 78, 80. H&M ceased representation of Viatek in Radiancy action in August 2014. *Id.* ¶ 82.

Separately, Viatek also retained H&M to bring a suit against Violife, Inc. ("Violife") for an alleged violation of Viatek's trade dress.[5] *Id*. ¶ 30. On July 2, 2013, H&M sent a retainer agreement to Viatek, which Lentine executed on behalf of the company and returned to H&M. *Id*. ¶ 31. The parties to that action ultimately agreed to a settlement and Viatek had instructed H&M to use the proceeds of the settlement to offset its outstanding balance in the Radiancy action. *Id*. ¶ 83. Right before the settlement was executed, however, Viatek amended the draft agreement between Viatek and Violife, removing H&M as the payee of the settlement. *Id.* The settlement was instead paid to Viatek. *Id.* Viatek did not pay H&M any proceeds from the Violife settlement to offset the indebtedness in the Radiancy action, as previously agreed. *Id.*

H&M also represented Viatek in patent infringement actions brought by Moto Boost Technologies, LLC ("Moto Boost") in November 2013,[6] *Id.* ¶ 47, and Bon-Aire Industries, Inc. ("Bon-Aire") in December 2013.[7] *Id*. ¶ 49. H&M regularly sent Viatek invoices for legal services in connection with the Radiancy,[8] Moto Boost,[9] and Bon-Aire[10] actions. *Id*. ¶ 50.

---

[5] *See Viatek Consumer Products Group, Inc. v. Violife, Inc.*, No. 7:13-cv-04931-KMK (S.D.N.Y.).

[6] *See Moto Boost Technologies LLC v. Viatek Consumer Products Group, et al.*, No. 2:13-cv-08813-MWF (C.D. Cal.).

[7] *See Bon-Aire Industries, Inc. v. Viatek Consumer Products Group, Inc.*, No. 1:13-cv-00403-EJL (D. Idaho).

[8] *See* Exhibit C for the invoices of the Radiancy action.

[9] *See* Exhibit D for the invoices of the Moto Boost action.

[10] *See* Exhibit E for the invoices of the Bon-Aire action.

Viatek initially paid H&M, but as time went on, allowed large, unpaid balances to accumulate. *Id*. ¶ 51. H&M continued to represent Viatek despite the unpaid balances, and was able to settle the Bon-Aire action in favor of Viatek. *Id*. ¶ 53.

In addition to not paying the invoices as they came due, Viatek tried to apply the $20,000 per month cap retroactively, to lower the outstanding balance. *Id*. ¶¶ 83-84. A spreadsheet prepared by Viatek purported to show only a total outstanding balance of $242,127 across all four actions. *Id.* H&M alleges that Viatek owes at least $350,926. *Id.* ¶ 85.

H&M also alleges that Viatek has a pattern of refusing to pay outstanding legal fees, owing to it and other firms.[11] *Id*. ¶ 86. The other law firms include the Ryder Firm, the Pike Law Firm P.C. of Georgia, and the Canadian firm of Miller Thompson. *Id.*

On March 2, 2018, H&M filed the instant action, asserting claims for breach of contract, account stated, quantum meruit, and unjust enrichment. Compl. ¶¶ 83-98, Doc. 1. H&M also seeks to establish a constructive trust in its favor as a remedy for unjust enrichment. *Id*. ¶ 98. H&M filed an Amended Complaint on June 21, 2018. Amend. Compl. ¶¶ 93-108, Doc. 18. On July 12, 2018, Lentine moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6).

**II. Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (1955)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant

---

[11] H&M alleges that Lentine and his wife, Kelli Lentine, also engaged in unrelated and unspecified "illegal" real estate activities. *Id*. ¶ 87.

has acted unlawfully." *Id*. The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011).

## III. Discussion

### A. Choice of Law

This Court has jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332. A federal court exercising diversity jurisdiction must apply the choice of law analysis of the forum state, in this case, New York. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). H&M brings claims that are based on both express and implied contracts. Under New York choice of law rules, "the interpretation and validity of a contract is governed by the law of the jurisdiction which is the center of gravity of the transaction." *Alderman v. Pan Am World Airways*, 169 F.3d 99, 103 (2d Cir. 1999); *see also Zoll v. Ruder Finn, Inc.*, No. 01 CIV. 1339(CSH), 2004 WL 42260, at *4 (S.D.N.Y. Jan. 7, 2004) (explaining that both contracts and quasi-contracts are subject to the choice of law rules of the jurisdiction which has the most contacts to the contract). To determine center of gravity or contact in contracts claims, factors include "the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 618 N.Y.S.2d 609, 612 (1994). Viatek denies H&M's claim that a substantial part of the events or omissions occurred within New York. Answer ¶ 7, Doc. 19. However, there can be no dispute that Viatek retained H&M to work on four cases, two of which, Radiancy and Violife, were filed in the Southern District of New York. H&M also has an office in New York. Therefore, New York choice of law rules apply as it is the center of gravity for the contracts in question.

Generally, officers and agents of a corporation are not liable for the actions taken in capacity of their positions. Specifically, officers and agents of a corporation are not held liable for breach of contract if their decisions are what resulted in the breach. *Novak v. Scarborough Alliance Corp.*, 481 F.Supp.2d 289, 293 (S.D.N.Y. 2007). An exception to this is corporate veil piercing. Here, the signatory party is Viatek. Lentine is a nonsignatory party, so, as discussed below, he may only be held liable on each of the four claims if the corporate veil can be pierced on the facts alleged.

Under New York Law, an account stated claim requires "an agreement between parties to an account based upon prior transactions between them…." *LeBoeuf, Lamb, Green & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65 (2d Cir. 1999) (quoting *Chisholm–Ryder Co. v. Sommer & Sommer*, 421 N.Y.S.2d 455, 457 (N.Y.App.Div. 1979). This agreement can be established when one party receives a statement of account, such as an invoice for legal services, and keeps it without objecting to it within a reasonable time. *Id.* The agreement can also be established if the debtor makes a partial payment. *Id.* An account stated may be established between an attorney and his client. *Id.* (citing *Rodkinson v. Haecker*, 248 N.Y. 480 (1928)). The parties are the entities or individuals listed on the invoices or agreements that establish the account stated. *See Jiangsu High Hope Corp. v. Parigi Group Ltd.*, No. 17-CV-1570 (PAC), 2018 WL 1603868, at *3 (S.D.N.Y. Mar. 29, 2018) (citing *Sound Commc'ns, Inc. v. Rack and Roll, Inc.*, 88 A.D.3d 523, 523 (N.Y . App. Div. 1st Dep't 2011)). Here, all invoices are addressed to Viatek, not Lentine. To hold Lentine liable, H&M seeks to pierce the corporate veil. *See Sound Commc'ns*, 88 A.D.3d at 523.

Applying New York law, the Court may analyze quantum meruit and unjust enrichment together as a single quasi contract claim. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v.*

7

*Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005). To recover in quantum meruit under New York law, H&M must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Id.* (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000)). To establish unjust enrichment under New York law, H&M must establish that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."[12] *Grynberg v. ENI S.P.A.*, 503 Fed.Appx. 42, 32 (2d Cir. 2012). "Although privity is not required for an unjust enrichment claim, a claim will not be supported if the connection between the parties is too attenuated." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011). Here, H&M provided legal services to Viatek, establishing the requisite relationship between the two. However, in the absence of an established relationship between H&M and Lentine, H&M must pierce the corporate veil to hold Lentine personally liable.

**B. Choice of Law for Corporate Veil-Piercing**

Under New York choice of law principles, "the law of the state of incorporation determines when the corporate form will be disregarded." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995). But, "the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 382 (2d Cir. 2006) (quoting *In re Allstate Ins. Co., (Stolarz)*, 613 N.E.2d 936, 937 (1993)). If there is no conflict,

---

[12] H&M requests that a constructive trust be established in its favor if the Court finds that Viatek has been unjustly enriched. Generally, a constructive trust may be established "when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest." *Brand v. Brand,* 811 F.2d 74, 77 (2d Cir. 1987) (quoting *Simonds v. Simonds*, 45 N.Y.2d 233, 241(1978). Because the Court finds that H&M has not established that Lentine has been unjustly enriched, there is no basis for the establishment of a constructive trust against him.

then the Court should apply the law of the forum state." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 422 (2d Cir. 2006) (citing *Excess Ins. Co. Ltd. v. Factory Mutual Ins. Co.*, 769 N.Y.S.2d 487, 489 (1st Dep't 2003)). Here, H&M and Viatek dispute whether New York law or Florida law should apply, as Viatek is incorporated in Florida.

Under Florida Law, the Court will not pierce the veil absent improper conduct by the corporation, even if the corporation is a mere instrumentality of the shareholder. *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1121 (Fla. 1984). There is improper conduct when the corporation is "organized or used to mislead creditors or to perpetrate fraud upon them." *Id.* at 1119 (quoting *Riley v. Fatt*, 47 So.2d 769, 773 (Fla. 1950)). A showing of improper conduct requires "pleading and proof that the corporation was organized for an illegal purpose or that its members fraudulently used the corporation as a means of evading liability *with respect to a transaction that was, in truth, personal and not corporate*." *Id.* at 1119-20 (emphasis added). The criteria to pierce the corporate veil is "(1) control of the parent [or shareholder] over the subsidiary to the degree that it is a mere instrumentality, (2) parent [or shareholder] committed fraud or wrongdoing through its subsidiary, and (3) unjust loss or injury to a claimant, such as when the subsidiary is insolvent." *Am. Intern. Group, Inc. v. Cornerstone Businesses, Inc.*, 872 So.2d 333, 337 (Fla. 2d DCA 2004) (citing *Unijax Inc. v. Factory Ins. Ass'n*, 328 So.2d 448, 454 (Fla. 1st DCA 1976)).

Under New York Law, a plaintiff must show "(1) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (2) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95, 97 (2d Cir.1997) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130, 134 (2d Cir.1997)); *see also D. Klein &*

*Son, Inc. v. Good Decision, Inc.*, 147 Fed.Appx. 195 at 197 (2d Cir. 2005). Both New York and Florida require the control or domination by a parent or shareholder, and use of the control to commit fraud upon another. In *Network Enters., Inc. v. APBA Offshore Prods., Inc.*, the court found that "the laws of New York and Florida governing the analysis [of alter ego liability] are substantially the same" and determined that since the consideration would be the same under either New York or Florida law, there was no true conflict and applied New York law. No. 01–CV–11765 (CSH), 2002 WL 31050846, at *3 (S.D.N.Y. Sept. 12, 2002), *aff'd*, 264 F. App'x 36, 40 (2d Cir. 2008); *see also Wausau Bus. Ins. Co. v. Turner Const. Co.*, 141 F. Supp. 2d 412, 417 (S.D.N.Y. 2001). Accordingly, in the absence of any conflict, New York law applies.

**C. Piercing the Corporate Veil**

The critical question in veil piercing is "whether the corporation is a 'shell' being used by the individual shareowners to advance their own purely personal rather than corporate ends." *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 138 (2d Cir. 1991). To determine this question, the two main factors are complete domination and fraud.

**i. Complete Domination**

There is no explicit test for determining whether the parent or shareholder exercises complete domination over a corporation. Instead, the Court looks at a variety of factors such as:

> "(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9)

10

the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own"

*Id.* at 139. Here, the entirety of H&M's allegations concerning Lentine's alter ego liability are that (1) Lentine is the founder, owner, president, and CEO of Viatek; (2) Lentine makes various references to Viatek on his personal website, which lists his contact information as his business address, e-mail, and phone number at Viatek; (3) the bottom of each webpage states "© 2015 Viatek Consumer Products Group, Inc."; and (4) Joe Durek, a Viatek executive, also conducts personal real estate transactions for Lentine and his wife. Amend. Compl. ¶¶ 13-15, Doc. 18.

These facts, however, do not remotely establish that Lentine exercises complete domination over Viatek. H&M cites *D. Klein & Son, Inc. v. Good Decision, Inc.* as support because in that case, the district court found that the common owner of two entities, Good Decision, Inc. ("GDI") and Good Decision, Ltd. ("GDL") used his domination of both companies to obfuscate their separate identities by, for example, using the same marketing materials, office space, e-mail addresses, and telephone numbers. 147 Fed.Appx. 195, 198 (2d Cir. 2005). However, the court determined that it was appropriate to pierce the veil in *D. Klein* after also finding that the owners used the "entities interchangeably with no regard for their separate identities," and that the companies did not operate as independent profit centers or deal at arms-length with their businesses. *Id.* This case is clearly distinguishable because here, no allegation is made that there was *any* comingling of Lentine's personal finances with that of Viatek. Moreover, as *D. Klein* observes, "[t]he reason veil piercing in the contract context is infrequent is because the party seeking relief is 'presumed to have voluntarily and knowingly entered into an agreement with a corporate entity, and is expected to suffer the consequences of limited liability associated with the business form.'" *Id.* (quoting 1 William Mead Fletcher et al.,

11

*Fletcher Cyclopedia of the Law of Private Corporations* § 41.85 (perm. ed. rev.vol.1999)). The allegations here simply do not rise to the level described in *D. Klein*.

In a more analogous case, *American Fuel*, the Second Circuit reversed the district court's veil piercing due to an insufficient showing of complete domination. 122 F.3d at 134-35. In *American Fuel*, the Utah Energy Development Company, Inc. ("UEDC") had no contracts, employees, independent office space, separate bank account, or capital or assets at the time of trial. *Id.* Instead, its address was the home address of the company president. *Id.* at 135. Despite these factors, the Second Circuit found that the president did not completely dominate UEDC because, among other reasons, there was no evidence that he used corporate funds for personal matters. *Id.* Here, while Lentine uses Viatek's address, e-mail, and phone number on his personal website, there likewise is no evidence that Lentine used corporate funds for personal matters. Although H&M cites to Joe Durek's work on Lentine's personal real estate transactions, there is no allegation that Durek was paid by Viatek for that work. Amend. Compl. ¶¶ 15-17, Doc. 18.

Similarly, in *Tycoons Worldwide Group (Thailand) Public Co., Ltd. v. JBL Supply Inc.*, the majority shareholder and officer of JBL Supply, Inc. used a non-JBL email address when conducting JBL business. 721 F.Supp.2d 194, 205-06 (S.D.N.Y. 2010). Absent any other factors, such as intermingling of personal and corporate funds, or failure to maintain adequate records for the corporation, the court found that being the majority shareholder and using a non-corporate email for business was not enough to show complete domination. *Id.* at 206. Furthermore, the existence of a sole and controlling shareholder alone is not enough to support complete domination. *Id*. (citing *U.S. ex rel. Siewick v. Jamieson Science & Eng'g, Inc.*, 191 F.Supp.2d 17, 21 (D.D.C. 2002); s*ee also*, *eBC, Inc. v. MAP Techs., LLC*, No. 09 CIV. 10357

CS, 2011 WL 12847702, at *6 (S.D.N.Y. May 17, 2011) (using personal and business emails interchangeably did not constitute a disregard of the corporate form, nor did it show the shareholders' domination over the corporation).

In *OOO v. Empire United Lines Co., Inc.,* the Second Circuit affirmed the district court's finding that Empire's sole shareholder was not the alter ego of Empire despite the fact that the company did not have a board of directors, treasurer, or secretary. 557 Fed.Appx. 40, 46 (2d Cir. 2014). The plaintiff failed to show any evidence of the intermingling of funds, failure to maintain adequate records, or use of Empire to conduct business for the shareholder's personal benefit. *Id.* Similarly in *Zhang v. American Oriental Bioengineering Inc.*, the CEO and chairman of the defendant company was found not to be its alter ego despite signing agreements on its behalf and being a significant shareholder with substantial voting power. No. 10 CIV. 4886 (PGG), 2011 WL 13128600, at *3 (S.D.N.Y. Sept. 12, 2011), *aff'd Zhang v. Am. Oriental Bioengineering, Inc.*, 517 F. App'x 51 (2d Cir. 2013). The plaintiff did not plead any facts to suggest that the CEO had acted in an individual capacity to perpetrate a fraud. *Id.*

Here, H&M's reliance on Lentine's personal website to show Lentine's domination of Viatek is completely unavailing. Simply being the shareholder, founder, CEO, and president of a corporation and interchangeable personal and business contact information is insufficient to establish domination. Moreover, Durek's involvement in personal real estate transactions for Lentine and his wife is of no moment in the absence of an allegation that the work was done by exploiting Viatek's resources.

Therefore, H&M's allegations are insufficient to establish the first element of piercing the corporate veil.

### ii. Fraud or Wrongdoing Through Complete Domination

Even if H&M had shown domination by Lentine over Viatek, it must show that this domination was used to perpetrate a fraud or wrongdoing. Here, the only "wrongdoing" H&M points to is Viatek's failure to pay H&M's bills. However, the "courts do not hesitate to dismiss fraud-based claims resting wholly on contract breaches and any inferences that might flow from the fact of those breaches. The presence of a pattern of multiple breaches does not alter this principle that allegations of financially rewarding breaches are insufficient." *Creaciones Con Idea, S.A. de C.V. v. MashreqBank PSC*, 51 F.Supp.2d 423, 430 (S.D.N.Y. 1999) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)). H&M thus fails to establish this factor as well.

Since the corporate veil will not be pierced, Lentine may not be held liable on any of H&M's four causes of action.

## IV. Conclusion

For the reasons set forth above, Lentine's motion to dismiss is GRANTED. The parties are instructed to appear for an Initial Pretrial Conference on December 5, 2018, at 11:00am. The Clerk of Court is respectfully directed to terminate the motion, Doc. 20.

It is SO ORDERED.

Dated: November 8, 2018
       New York, New York

                                                  Edgardo Ramos
                                                  United States District Judge